Charles J. Messina, Esq.
Maria R. Fruci, Esq.
Michael Mondelli III, Esq.
**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07102
Telephone: (973) 533-0777
*Attorneys for Plaintiff,*
*Wayne Chan*

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WAYNE CHAN,<br><br>Plaintiff,<br><br>v.<br><br>GOLDEN NUGGET ATLANTIC CITY LLC,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, Wayne Chan ("Plaintiff"), by and through the undersigned counsel, against defendant, Golden Nugget Atlantic City LLC ("Defendant"), hereby alleges as follows:

## INTRODUCTION

1. In gambling it is generally known that there is only one certainty — the house always wins in the end. Casinos are, in fact, designed to ensure profitability.

2. But our legislature has declared that an integral and essential element of the regulation and control of casino facilities in this State rests in the public confidence and trust in the credibility and integrity of the regulatory process and of casino operations.

3. To further such public confidence and trust, the regulatory provisions of the New Jersey Casino Control Act are designed to extend *strict* regulation to all practices related to the operation of casino enterprises.

4. During a period spanning from 2018 through 2019, Plaintiff frequently played craps at Defendant's casino. This action seeks the return of over $469,125.00 in lost money by Plaintiff during this timeframe as a result of Defendant's violation of various New Jersey gambling statutes and regulations which were supposed to be strictly complied with — but were not.

5. Specifically, Defendant marked or "scribed" dice used in the casino, and Defendant also used non-transparent dice in the casino.

6. The use of non-transparent dice is particularly egregious as it potentially facilitates cheating through using weighted dice, which is part of the reason dice are required to be transparent.

7. These illegal practices placed Plaintiff at an even greater disadvantage when the games are already stacked against the players and in favor of the casinos.

8. As a result of Defendant's conduct, Defendant should at least return the money lost by Plaintiff.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 1332(a)(1) because the total amount in controversy, exclusive of interest and costs, exceeds the jurisdictional threshold of $75,000.00 and is between citizens of different states.

10. Venue in this District is appropriate pursuant to 28 U.S.C. § 1391 because Defendant is incorporated and has its primary place of business in the District of New Jersey.

## PARTIES

11. Plaintiff is an individual with a primary residence located at 225 East 57th Street, New York, New York 10022.

12. Defendant is an entity licensed by the New Jersey Casino Control Commission to operate a casino. Defendant owns and operates the Golden Nugget Hotel, Casino, and Marina located at 600 Huron Avenue, Atlantic City, New Jersey (the "Golden Nugget").

## FACTUAL BACKGROUND

13. Beginning in 2018, Plaintiff began visiting the Golden Nugget, owned and operated by Defendant.

14. Plaintiff played craps when he visited the Golden Nugget.

15. From 2018 through 2019, Plaintiff was caused to lose $469,125.00 playing craps at the Golden Nugget.

16. Plaintiff's losses for each year are broken down as follows:

   a. 2018 (– $234,225.00)

   b. 2019 (– $234,900.00)

Attached hereto as **Exhibit A** are true and accurate copies of Plaintiff's estimate net win/loss statements for 2018 and 2019.

17. Defendant alleges that Plaintiff owes it a balance of approximately $200,000.00.

18. Plaintiff noticed as he continued playing craps at the Golden Nugget that something was wrong with the dice used at the tables.

19. Plaintiff observed, on several occasions, that the dice used at the craps tables were marked, or "scribed."

20. Upon further information and belief, the dice were intentionally scribed by employees and/or agents of Defendant.

21. In fact, Defendant has previously admitted that it is common practice for Defendant's employees to mark the dice, claiming it's "an industry recognized practice" Attached hereto as **Exhibit B** is the January 13, 2020 letter from Defendant's counsel.

22. However, this purported "custom" runs afoul of New Jersey State statutes and regulations.

23. Due to Defendant's admitted violation of New Jersey laws and regulations, Plaintiff filed a complaint with the New Jersey Division of Gaming Enforcement on January 14, 2020. Attached hereto as **Exhibit C** is Plaintiff's January 14, 2020 complaint filed with the New Jersey Division of Gaming Enforcement.

24. To date, however, the New Jersey Division of Gaming Enforcement has failed to make a determination on the complaint, constraining Plaintiff to bring this action.

25. The storage, and use, of dice in casinos is heavily regulated by the Casino Control Commission ("CCC") and the New Jersey Division of Gaming Enforcement ("NJDGE").

26. Specifically, N.J.A.C. 13:96E-1.16 prescribes meticulous procedures for ensuring the integrity of dice used in a casino from their receipt until they are ultimately put into use on the casino floor.

27. The NJDGE regulations require a casino licensee to "remove any dice at any time of the gaming day if there is any indication of tampering, flaws, or other defects that might affect the integrity or fairness of the game or at the request of the [NJDGE]." See N.J.A.C. 13:69E-1.16(g).

28. In the event of any dice evidence tampering, the casino licensee is required to place the dice in a sealed envelope or container.  See N.J.A.C. 13:69E-1.16((h)(i).

29. Thereafter, the casino licensee is required to adhere to the following procedure:

   a. "A label shall be attached to each envelope or container, which shall identify the table number, date, and time and shall be signed by a person assigned to directly operate and conduct the game at that table and a casino games supervisor assigned the responsibility for supervising the operation and conduct of such game."

   b. "The casino security officer taking custody of the dice and delivering the dice to the [NJDGE] shall also sign the label."

[See N.J.A.C. 13:69E-1.16((h)(i)(1) and (2).]

30. As such, Defendant is clearly in violation of the NJDGE regulations with respect to the maintenance of its' dice and reporting any dice which are tampered with.

31. Additionally, Plaintiff observed that the Golden Nugget would use non-transparent dice in further contravention of New Jersey statutes and regulations.  Attached hereto as **Exhibit D** are true and correct photographs of the non-transparent dice used by Defendant.

32. This practice is also a direct violation of New Jersey regulations, which prescribe that dice used in all casinos "[b]e **transparent** and made exclusively of cellulose except for the spots, name or trade name of the casino licensee and serial number or letters contained thereon[.]" See N.J.A.C. 13:69E-1.15(a)(2) (emphasis added).

33. As an entity licensed under the laws of New Jersey to host and permit gambling activities on its premises, Defendant must adhere to all relevant statutes and regulations, including, but not limited to, the Casino Control Act, N.J.S.A. 5:12–1 to –190 ("CCA"), the

regulations promulgated by the CCC, N.J.A.C. 19:40A-1.1 to –6.7, and the New Jersey Division of Gaming Enforcement NJDGE, N.J.A.C. 13:69 – 69P.

34. As such, Defendant's marking or scribing of dice is an indisputable violation of the NJDGE's regulations.

35. Moreover, N.J.S.A. 5:12-100(e) provides that: "All gaming shall be conducted according to rules promulgated by the division. All wagers and pay-offs of winning wagers shall be made according to rules promulgated by the division, which shall establish such limitations as may be necessary to assure the vitality of casino operations and fair odds to patrons."

36. As a result, Defendant's marking of dice is impermissible under the New Jersey State Statutes.

37. Defendant's violations of State laws, statutes and regulations are a direct and proximate cause for Plaintiff losing money while playing craps at the Golden Nugget, and Plaintiff is therefore entitled to damages totaling a return of his losses, in addition to attorneys' fees, costs and any other monies the Court deems reasonable.

## COUNT ONE
### (Breach of Contract)

38. Plaintiff incorporates and realleges the allegations in each preceding paragraph as if set forth herein more fully.

39. Every time Plaintiff gambled at the Golden Nugget, as a condition of its' wagering, Defendant agreed to abide and be bound by the rules set forth by the NJDGE pursuant to the authority granted to it by the New Jersey legislature. Specifically, pursuant to N.J.S.A. 5:12-100(e): "All gaming shall be conducted according to rules promulgated by the division. All wagers and pay-offs of winning wagers shall be made according to rules promulgated by the

division, which shall establish such limitations as may be necessary to assure the vitality of casino operations and fair odds to patrons."

40. Furthermore, N.J.S.A. 5:12-115(a)(1) makes it "unlawful" for Defendant "[k]nowingly to conduct, carry on, operate, deal or allow to be conducted, carried on, operated or dealt any cheating or thieving game or device..."

41. In other words, marking dice and/or using non-transparent dice is in violation of the NJDGE regulations, and therefore, constitutes "cheating" on the part of Defendant.

42. Defendant and Plaintiff agreed, on all occasions on which Plaintiff gambled, to abide by the rules and regulations set forth by the CCA, CCC and NJDGE.

43. As such, the Parties entered into a contract (the "Contract").

44. The Contract between the Parties is a valid and binding contract under the law.

45. Plaintiff complied with all of his obligations under the Contract.

46. Defendant violated its obligations under the CCA, CCC, and NJDGE and thereby, the Contract by using improperly marked dice and non-transparent dice at its craps tables.

47. As a result, Plaintiff was damaged because he was caused to lose money while playing craps with dice that were not in compliance with New Jersey State statutes and regulations.

## COUNT TWO
**(Breach of Implied Contract)**

48. Plaintiff incorporates and realleges the allegations in each preceding paragraph as if set forth herein more fully.

49. Plaintiff and Defendant agreed to the rules and regulations promulgated by the CCA, CCC and NJDGE, when Plaintiff chose, and Defendant allowed Plaintiff, to play craps.

50. The conduct of the parties created an implied contract (the "Implied Agreement").

51. Plaintiff complied with all of his obligations under the Implied Agreement.

52. Defendant violated the Implied Agreement by allowing patrons, including Plaintiff, to play with dice which were tampered with and/or non-transparent by Defendant in violation of NJDGE regulations.

53. As a result of this violation of the Implied Agreement, Plaintiff was damaged because he lost money he may not otherwise have lost had the dice not been marked and/or were transparent in violation of the governing laws and regulations.

## COUNT THREE
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

54. Plaintiff incorporates and realleges the allegations in each preceding paragraph as if set forth herein more fully.

55. The Contract, and the Implied Agreement are valid contracts that existed between Plaintiff and Defendant.

56. As with every contract in New Jersey, the Contract and Implied Agreement between Plaintiff and Defendant each carried with it an implied covenant of good faith and faith dealing.

57. This covenant prevents either party from engaging in activities beyond the contract at issue and in bad faith, such that it would cause the other party harm.

58. Defendant breached this covenant by knowingly marking dice and using non-transparent dice in violation of State statutes and regulations – the CCA and NJDGE – violating the Contract and Implied Agreement between the parties.

59. Plaintiff relied on the representations of Defendant that the dice were in conformance with the relevant regulations as Plaintiff – and others – were allowed to, (and Plaintiff did), play and gamble at those tables.

60. As a result of Defendant's knowing and willful misrepresentations regarding the dice, Plaintiff was damaged because he lost money he may not otherwise have lost had the dice not been marked and/or were transparent as required by all governing laws and regulations.

## COUNT FOUR
### (Unjust Enrichment)

61. Plaintiff incorporates and realleges the allegations in each preceding paragraph as if set forth herein more fully.

62. By improperly marking dice and using non-transparent dice in contravention to State regulations, Defendant wrongly obtained lost wagers from Plaintiff.

63. Plaintiff would not have lost these monies had Defendant not tampered with the dice and/or used transparent dice at its craps tables in violation of the State regulations.

64. As a result of Defendant's knowing and willful impermissible conduct in tampering with the dice and using non-transparent dice, Defendant was unjustly enriched in the form of wrongly obtained wagered monies from Plaintiff.

**WHEREFORE**, Plaintiff demands judgment from Defendant as follows:

a. Compensatory damages in the amount of $469,125.00;

b. Attorneys' fees and costs associated with this action;

c. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury.

## DESIGNATION OF TRIAL COUNSEL

Charles J. Messina, Esq. and Maria R. Fruci, Esq. are hereby designated as trial counsel for Plaintiff.

Dated: September 24, 2021
      Newark, New Jersey

      By: *s/ Charles J. Messina*
          CHARLES J. MESSINA
          MARIA R. FRUCI
          **GENOVA BURNS LLC**
          494 Broad Street
          Newark, New Jersey 07102
          *Attorneys for Plaintiff,*
          *Wayne Chan*

15988391v3 (24359.005)